IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREGORY BELL<br>JASAAN WALKER, | :<br>:<br>: |
| Plaintiffs, | : CIVIL NO. 1:11-CV-1197 |
| v. | :<br>: Hon. John E. Jones III |
| WARDEN VINCENT MOONEY, *et al.*, | :<br>: |
| Defendants. | : |

## **MEMORANDUM**

August 5, 2011

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

This *pro se* civil rights action was initiated by Plaintiffs Gregory Bell ("Bell") and Jasaan Walker ("Walker") by filing a Complaint under the provisions of 42 U.S.C. § 1983. (Doc. 1.) At the time of filing, Bell and Walker were inmates at the Lackawanna County Prison in Scranton, Pennsylvania.

Along with their Complaint, Bell and Walker filed a Motion requesting leave to proceed *in forma pauperis* (Doc. 2) and authorization (Doc. 3) to allow funds to be deducted from their inmate accounts to pay the filing fee. However, their requests were not filed on the proper forms.[1] Accordingly, by Administrative Order dated June

---

[1] Plaintiffs' initial Motion requesting *in forma pauperis* status remains on the docket and will be denied as moot.

27, 2011, Plaintiffs were directed within thirty (30) days to each either pay the $350.00 filing fee or file a properly completed application to proceed *in forma pauperis* and an authorization form. (Doc. 6.) A footnote in the Order explained that, pursuant to *Hagan v. Rogers*, 570 F.3d 146 (3d Cir. 2009), the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(b)(1), requires that, where prisoner plaintiffs jointly file a civil rights action, each prisoner is required to pay the full filing fee. (*Id.* n.1.) The footnote also explained that this Court would dismiss without prejudice all Plaintiffs who do not complete and return the properly completed forms to proceed *in forma pauperis*. (*Id.*)

On July 5, 2011, Walker filed a properly completed Motion for leave to proceed *in forma pauperis* (Doc. 7) and an authorization form (Doc. 8). Thus, on July 6, 2011, an Administrative Order was sent to the Warden of the Lackawanna County Prison directing the Warden to begin deducting funds from Walker's inmate account to pay the filing fee. (Doc. 9.) The deadline for Bell to comply with the June 27, 2011 Administrative Order has expired, and he neither has made an appropriate submission nor requested an extension of time in which to do so. Accordingly, we shall dismiss Bell as a party to this action.

Based on Walker's request to proceed *in forma pauperis*, the Complaint presently is before us for screening under the provisions of 28 U.S.C. § 1915. For the

reasons set forth below, we shall grant Walker's request for *in forma pauperis* status for the sole purpose of filing the Complaint and dismiss the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. Walker also has filed a Motion for a Protective Order seeking an Order transferring him to the State Correctional Institution at Dallas ("SCI Dallas"), which will be denied without prejudice for the reasons explained below.

## I. ALLEGATIONS OF THE COMPLAINT

In their Complaint, which is dated June 18, 2011 and was filed on June 24, 2011, Plaintiffs name the following Defendants: Vincent Mooney, Warden of the Lackawanna County Prison; Linda McClain, operator of the inmate telephone system at the Lackawanna County Prison; and Inmate Telephone Incorporated ("ITI"), the telephone service provider for the Lackawanna County Prison.

Plaintiffs allege that they have made verbal complaints and have filed multiple grievances concerning the inmate telephone system at the Lackawanna County Prison. (Doc. 1 at 4.) They state that on June 16, 2011, they were provided with computer generated printouts of their individual inmate telephone records that confirmed their concerns and grievances. (*Id.*) Plaintiffs specify that they and their loved ones have made complaints about discrepancies in the inmate telephone system, including the disconnecting of Plaintiffs' calls on different occasions while still charging them for

an entire phone call rather than for the actual time of the phone call listed on the computer generated printouts. (*Id.*)

Plaintiffs state that both Defendant McClain and Defendant Mooney were contacted by Plaintiffs through inmate requests and grievances and by Plaintiffs' family members and were made aware of the discrepancies in the inmate telephone system. (*Id.*) They allege that, "[o]nce one unanswered request/grievance too many were filed by the plaintiff's [*sic*]," Defendant Mooney ordered Defendant McClain to suspend Bell's telephone privileges indefinitely without notice or any formal misconduct procedures, including a hearing. (*Id.*) They allege that Bell therefore was deprived of a means to directly contact his family other than by way of mail, and that in stripping him of his telephone privileges, Mooney violated each and every sanction procedure, misused his authority, and retaliated against Bell. (*Id.*)

Plaintiffs allege that ITI is the telephone service provider for Lackawanna County Prison and that any inmate housed there must deposit money into an inmate account in order to make phone calls, or their families must establish pre-paid accounts with ITI, and therefore, ITI and Lackawanna County Prison split the collection of the monies charged for each and every inmate phone call placed from the Lackwanna County Prison through the ITI System. (*Id.*) Plaintiffs allege that their families contacted ITI about the discrepancies with hang ups, dropped calls, and

billing issues, and that ITI has equal duties and responsibility to investigate each and every complaint and to reimburse any parties for these discrepancies. (*Id.*)

Plaintiffs allege that the Lackawanna County Prison and ITI failed to address the concerns raised by Plaintiffs as to the aforementioned discrepancies, thus leaving them with no recourse other than to file the instant civil rights action. (*Id.*)

As relief, Bell requests that Defendants pay the entire filing fee for this action as well as fees for any legal representation. (*Id.* at 5.) He also requests compensation due to cruel and unusual punishment and emotional distress, as well as reimbursement for the overbilling for dropped phone calls. (*Id.*)

Walker seeks reimbursement for overbilling for dropped calls as well as a transfer to a Pennsylvania Department of Corrections ("DOC") facility due to a fear of retaliation. (*Id.*) He also seeks damages for emotional distress and for cruel and unusual punishment. (*Id.*)

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1915(e)(2)(B)(ii), a federal court must dismiss a case filed *in forma pauperis* if the court determines that the complaint "fails to state a claim on which relief may be granted." In reviewing the legal sufficiency of a complaint, the Court must accept the truth of the plaintiff's factual allegations. *Morrison v. Madison Dearborn Capital Partners III L.P.*, 463 F.3d 312, 314 (3d Cir. 2006). The

controlling question is whether the complaint "alleges enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007) (rejecting the "no set of facts" language from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Ashcroft v. Iqbal*, - - - U.S. - - - - , 129 S.Ct. 1937, 1949 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (citation omitted). To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.*

Pro se pleadings are to be construed liberally, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and pro se litigants are to be granted leave to file a curative amended complaint "even when a plaintiff does not seek leave to amend . . . unless such an amendment would be inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). However, a complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir. 2002).

## III. DISCUSSION

### A. Walker's Complaint[2]

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

We first note that ITI is not a person acting under color of state law, and therefore is not a proper defendant in this action. Even if ITI were a proper party, Walker has failed to state a claim of a violation of a constitutional right either by ITI or any of the other Defendants. While the Complaint alleges that Defendant Mooney suspended Bell's telephone privileges indefinitely, the Complaint does not allege that Walker's telephone privileges ever were suspended. (*See* Doc. 1 at 4.) Therefore, based on the fact that Walker seeks damages for emotional distress and for "cruel and unusual punishment," it appears that his claim is that the occurrence of dropped calls and alleged overcharging for these calls violates his right to be free from cruel and unusual punishment. (*See id.* at 5.) It is well established that the loss of privileges,

---

[2]Because Bell has failed to comply with our June 27, 2011 Administrative Order and will be dismissed as a party to this action, we will discuss the allegations of the Complaint solely as they relate to Plaintiff Walker.

including visitation, telephone, and recreation privileges, does not amount to an infliction of cruel and unusual punishment. *See Overton v. Bazzetta*, 539 U.S. 126 (2003) (noting that there is no constitutional right to visits for inmates and clarifying that "[t]he very object of imprisonment is confinement. Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration. Freedom of association is among the rights least compatible with incarceration. Some curtailment of that freedom must be expected in the prison context"); *Leon v. Schaaff*, 2005 WL 2397241, at *4 (D.N.J. Sept. 23, 2005) (lost commissary and telephone privileges and placement in disciplinary confinement for 120 days do not impose atypical and significant hardship upon an inmate); *Troy v. Kuhlmann*, 1999 WL 825622, at *12 (S.D.N.Y. Oct. 15, 1999) (stating "denial of privileges such as telephone, package, and commissary privileges do not represent the type of deprivation which could reasonably be viewed as imposing an atypical and significant hardship on the inmate"); *accord Sealey v. Giltner,* 197 F.3d 578, 581 (2d Cir. 1999) (finding no violation of the Eighth Amendment where "[a]n inmate [was] confined to his cell 23 hours per day, [could] take no more than three showers per week, ha[d] limited library privileges and no telephone privileges."). If the loss of telephone privileges cannot

form the basis for a claim of cruel and unusual punishment, it therefore logically follows that, an inmate who enjoys telephone privileges cannot state a claim of cruel and unusual punishment upon which relief may be granted based upon problems he encounters with the telephone service, including dropped calls and overbilling for calls.  As such, Walker fails to state a claim upon which relief may be granted.

Moreover, as observed in *Wheeler v. Beard*, 2005 WL 1217191, at *10 (E.D. Pa. May 19, 2005), a District Court is not the proper forum for an inmate to air customer complaints about a telephone company's service.  Rather, "disputes involving the cost or adequacy of telephone services are subject to the primary jurisdiction of the Pennsylvania Public Utility Commission ("PUC")."  *Wheeler*, 2005 WL 1217191, at *10 (citing *Behrend v. Bell Tel. Co.,* 243 A.2d 346, 347 (Pa. 1968); *Elkin v. Bell Tel. Co.*, 420 A.2d 371, 374 (Pa. 1980)).  Accordingly, to the extent Walker seeks to pursue his complaints against ITI concerning the telephone service it provides to the Lackawanna County Prison, it would appear that the proper method for him to do so would be to file a formal complaint with the PUC.  *See Wheeler*, 2005 WL 1217191, at *10 n.12 (observing that plaintiffs should avail themselves of the PUC's formal complaint process if they desired to pursue their claims against Verizon).

Based on the foregoing, we shall dismiss the instant Complaint under the provisions of 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. Because any attempt at amendment by Walker would be futile, *see Alston*, *supra*, 363 F.3d at 235, dismissal will be with prejudice.

### B. Walker's Motion for Protective Order

On August 1, 2011, Walker filed a Motion in which he requests that this Court enter a protective order directing his transfer back to SCI Dallas in order to remove him from a hostile environment and allow him to litigate this lawsuit. (Doc. 10 at 4.) He makes the following allegations in his Motion:

On June 17, 2011, Defendant McClain interrupted Walker during a visit with his sister to discuss this lawsuit. (*Id.* at 1-2.) On June 20, 2011, Walker complained to Lieutenant Walsh about a lack of material in the law library. (*Id.*) On June 23, Walker requested a grievance because the telephone system still was dropping calls and taking money from inmates, and he also wrote to ITI, Assistant Warden Langdon, and McClain. (*Id.*) On July 5, 2011, the Maintenance Department replaced a telephone, but on the same date, the telephone system dropped two more of Walker's calls. (*Id.*)

On July 7, Walker's cell was the only cell subject to a shake down. (*Id.* at 3.)

On July 11, he was locked down in his cell.  (*Id.*)  On July 23, Lieutenants Walsh and Mick toured the unit where Walker was housed and asked questions about the telephone.  (*Id.*)  Walker informed them about the problem with the telephones, and Walsh wrote down Walker's name and took a copy of his lawsuit.  (*Id.*)

On July 25, Walker was transferred from his Housing Unit to the "Hole" and was informed that he was involved in an assault, but the write-up that was issued did not name any victim of the assault.  (*Id.*)  On July 28, members of the Housing Unit where Walker was housed wrote grievances and statements stating that Walker was not involved in any assault and gave them to Lieutenant Murray.  (*Id.*)  Based upon these events, and "any future incidents", Walker requests that we direct his transfer to SCI Dallas.  (*Id.* at 4.)

Because Walker's request for injunctive relief in the form of a transfer to a different facility is based upon his allegations concerning events that occurred *after* the filing of this lawsuit, which is being dismissed with prejudice for failure to state a claim upon which relief may be granted, to the extent Walker wishes to pursue a claim based upon these events and to assert a request for injunctive relief, he will need to do so in the context of a newly filed civil rights action.[3]  As such, we shall deny his

---

[3] We express no opinion as to the merits of any civil rights action Walker may file based upon the allegations he sets forth in his Motion.

Motion for Protective Order without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Complaint will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted, and Walker's Motion for Protective Order will be denied without prejudice to any right he may have to re-file it in the context of a newly filed civil rights action.  An appropriate Order will enter.